## AFFIDAVIT OF MICHAEL FEAGAN IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT

I, Michael Feagan, having been duly sworn, hereby depose and state the following:

## INTRODUCTION

1. I am a Special Agent with the United States Secret Service, and I have been in this position since July 5, 2017. I attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, GA and the United States Secret Service Special Agent Training Course at the James J. Rowley Training Center in Beltsville, MD. This training included, among other things, the investigation of financial crimes including access device fraud, bank fraud, forgery, and counterfeit U.S. currency. As part of this training, I received intensive instruction in the detection, identification, and classification of genuine Federal Reserve Notes through classroom lectures, hands-on training, and practical exercises. I also received training in the location and identification of security features unique to genuine currency. I am a veteran of the United States Army, and I hold a Bachelor of Science Degree in Criminal Justice.

2. I make this affidavit in support of a criminal complaint charging Victor CARDONA, YOB 1988, of Quincy, Massachusetts, with one count of falsely making, forging, counterfeiting, or altering, with intent to defraud, any obligation or other security of the United States, in violation of 18 U.S.C. §§ 471 and 2 (aiding and abetting).

3. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses.

This affidavit is intended to show merely that there is probable cause to secure a criminal complaint and does not set forth all of my knowledge about this matter. Where statements of others are set forth in this affidavit, they are set forth in substance and in part.

## STATEMENT OF PROBABLE CAUSE

4. On October 30, 2019, at approximately 6:00 AM, U.S. Secret Service (USSS) agents, with the assistance of state and local law enforcement, executed a federal search warrant, authorizing them to search the premises at 97 Phipps Street, Quincy, Massachusetts, for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 471.

5. Since January 2019, USSS agents have been conducting an investigation into the source of older-style, bleached counterfeit $100 bills in the greater Boston area. Through the investigation and ultimately by analyzing the cell phone records of individuals known to have passed certain counterfeit $100 bills, agents were able to identify the address, 97 Phipps Street, Quincy, Massachusetts, of an individual in contact with multiple "passers" of counterfeit currency.

6. On October 24, 2019, USSS agents recovered trash bags from the trash bins located on the sidewalk of 97 Phipps Street, Quincy, Massachusetts. A review of the contents revealed numerous Epson 220 inkjet printer cartridges, multiple pairs of used rubber gloves, multiple Mr. Clean Magic Erasers, multiple clippings of a bleached $1 note reprinted with an older-style $100 image, and a plastic grocery bag filled with shredded paper with images of older-series $100 bills. The counterfeit notes included serial numbers and back plate numbers

that match a significant amount of counterfeit $100 bills received in the course of the USSS investigation.

7.  On October 30, 2019, in executing the search warrant, agents knocked on the door and announced themselves several times. After getting no response, the agents forced entry to the residence and entered. Agents observed CARDONA and another individual in a bedroom in the house. CARDONA and the other individual were detained and informed that they were not under arrest. They were led out of the house and informed that a search warrant was being conducted at the residence.

8.  CARDONA was advised of his rights pursuant to *Miranda* and agreed to speak with agents at the Quincy Policy Department. As the search was conducted at the residence, CARDONA was transported to the the Quincy Police Department, where CARDONA was again advised of and executed a written waiver of his rights pursuant to *Miranda*. The subsequent interview was recorded; unless otherwise indicated, all statements set forth below are summary in nature.

9.  When asked about the counterfeiting of $100 bills, CARDONA admitted that, at the instruction of another individual and since at least Summer 2019, he has regularly procured materials for the purpose of counterfeiting currency, including detergent and degreaser, used to bleach genuine $1 bills on which counterfeit $100 notes are printed. CARDONA indicated that he has purchased counterfeiting materials from a variety of stores, including Autozone, Walgreens, and Walmart.

10. CARDONA stated that he communicates by phone with this other individual on at least a weekly basis and that, after CARDONA has procured the counterfeiting materials, the other individual comes to CARDONA's residence to print the counterfeit currency. CARDONA admitted that he voluntarily has provided space in his residence for the counterfeiting to take place and that he has been present for the production of the counterfeit currency.

11. CARDONA described the manner in which the counterfeit $100 notes were produced in his residence and while he was present:

   a. First, a genuine $100 note was placed on the scanner of an "all-in-one" printer (that is, a printer that has scanning, copying, and printing functions) and that a copy of the bill was made on plain computer paper.

   b. Second, a bleached $1 bill was lined up on the copy, directly over the image of the bill, and taped to the page.

   c. Finally, and without having moved the original $100 note from the scanner, the $100 bill was photocopied onto the bleached $1 bill.

12. CARDONA indicated that approximately 10-20 counterfeit $100 notes were produced during an average counterfeiting session and that these sessions occurred on a weekly basis, usually on Sundays. CARDONA told agents that $100 notes were counterfeited at his residence using materials he had procured for the purpose of counterfeiting as recently as Sunday, October 27, 2019.

13.     CARDONA admitted to burning counterfeit and related materials in the backyard of his residence. He also admitted to throwing out counterfeiting materials in his trash, including the counterfeiting materials discovered during a "trash pull" executed by USSS on October 24, 2019.

14.     During the interview, CARDONA also told agents where certain counterfeiting materials were located in his residence, including that genuine $100 bills were located in an armrest in the couch and that there was a counterfeit $100 bill in his wallet.

15.     In the course of executing the search warrant, agents found materials known to be used in the counterfeiting of U.S. Currency, including:

   a. Two Epson inkjet printers, an Epson WF2760 and an Epson XP640, both "all-in-one" inkjet printers, in plain view in the first-floor bedroom;

   b. One Amazon Basics shredder, containing counterfeit bills that had been shredded, in plain view in the living room;

   c. Burned remains of counterfeit currency in the backyard;

   d. Four genuine $100 notes, including one bearing the serial number E52327421A and one bearing the serial number B61935669B, counterfeits of which have been recovered in the course of USSS's investigation in this matter, stored in an armrest of the couch in the living room;

   e. One "counterfeit buster" detection pen found on couch in living room;

   f. Cleaning products, including degreaser and Mr. Clean magic eraser(s), found in kitchen; and

   g. One counterfeit $100 bill in a wallet in which a bank card with CARDONA's name was also found.

## CONCLUSION

16. Based on all of the foregoing information, I submit that there is probable cause to believe that:

   a. on or about October 27, 2019, CARDONA did aid and abet the making, forging, counterfeiting, or altering, with intent to defraud, of any obligation or other security of the United States, in violation of 18 U.S.C. §§ 471 and 2.

Sworn to under the pains and penalties of perjury,

_____
Special Agent Michael Feagan
United States Secret Service

SUBSCRIBED and SWORN to before me on October 30, 2019.

_____
HONORABLE M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE