UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | DOCKET NO.: 19-CR-10480-FDS |
| ) | |
| VICTOR CARDONA ) | |

# **DEFENDANT'S SENTENCING MEMORANDUM**

Every day since the date of his arrest and release on this case - 38 months ago - Mr. Cardona has unequivocally demonstrated his commitment to becoming a better person. The criminal justice system lauds rehabilitation as the Holy Grail; reshape a person's way of thinking and behaving, and you eliminate the risk of further criminal activity. Mr. Cardona has done just that over the last 3 years: he has maintained employment; supported his family; gone out of his way to help others; and completely changed his way of thinking. The numerous letters attached as Exhibit A confirm the positive changes in Victor. The letters describe a man of kindness, empathy, caring who goes out of his way to help his coworkers and friends.

Cognizant that his criminal conduct in this case is serious, Mr. Cardona does not seek a non-jail sentence despite the fact that one may be warranted based on all the circumstances and sentencing factors.[1] Rather, Mr. Cardona requests that the Court impose a sentence of one year and one day followed by three years of supervised release. The proposed sentence reflects a

---

[1] Notably, the Presentence Report calculates Mr. Cardona's sentencing guidelines as 70 – 87 months driven primarily by a criminal history classification of VI. As argued below, and noted in the Presentence Report, Criminal History Category VI significantly overstates Mr. Cardona's prior criminal history. *See* Presentence Report, ¶ 95. Defendant submits that he is more appropriately viewed as Criminal History Category II, in which case the Sentencing Guideline Range would be 37 – 46 months.

–1–

reasoned consideration of the nature and seriousness of the offenses, Mr. Cardona's personal history, his behavior since the offense, specific and general deterrence, and the need for just punishment. Such a sentence is an appropriate disposition in this case and is "minimally sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008).

## ARGUMENT

### A SENTENCE OF TIME SERVED IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO EFFECTUATE THE SENTENCING GOALS OF 18 U.S.C. § 3553(a).

The United States Supreme Court, recognizing the immense discretion afforded to sentencing judges, advised that sentencing courts should "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Sentencing requires a "more holistic inquiry" than simply plugging numbers into a guidelines calculation, and that, at least in the federal context, the federal statutory factors to be considered are "a tapestry of factors, through which runs the thread of an overarching principle [of parsimony]." *Rodriguez,* 527 F.3d at 228, citing *Kimbrough v. United States,* 562 U.S. 85, 101 (2007). That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id*. In reaching a decision on what constitutes an appropriate sentence, the court should "consider all the relevant factors" and "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *Id.*

1. **The Nature and Circumstances of the Offense**

The offense conduct here is serious. Mr. Cardona participated in a counterfeiting operation that collectively was responsible for approximately $450,000 in counterfeit $100 bills.

A search of his home revealed numerous counterfeiting items including a shredder containing counterfeit bills, printers, and four genuine $100 bills three of which bore the same serial numbers that appeared on recovered counterfeit bills. Mr. Cardona admitted his involvement to law enforcement and told them that he and his co-conspirators used his house to produce counterfeit money. Mr. Cardona acknowledges the seriousness of his offense and the harm it causes businesses who accept counterfeit money.

The amount of counterfeit money recovered in this case results in a 12 point increase in Mr. Cardona's offense level. Despite the amount of counterfeit money recovered in this case, there is no evidence that Mr. Cardona has lived an extravagant life. Counsel submits that his simple lifestyle is indicative of the role he played in this offense. Namely, allowing his home to be used as a base for the counterfeiting operation and receiving a sum of money in exchange. While no one else has been charged federally with this offense, several individuals were arrested for passing counterfeit notes and charged on a state or local level. None of this diminishes the severity of the offense and Mr. Cardona accepts full responsibility for his actions and understands that the consequence of his actions is that he will be sentenced to federal prison.

2. **The Sentencing Guidelines**

In this case, the Sentencing Guidelines recommend a sentence between 70 – 87 months. Those guidelines are driven primarily by Mr. Cardona's placement in Criminal History Category VI. Criminal History VI is reserved for the worst offenders to appear before this Court, not something that Mr. Cardona even remotely qualifies for. Out of Mr. Cardona's 12 criminal history points, **10 of them** result from driving with a suspended or revoked license. Absent these 10 criminal history points, Mr. Cardona would be in Criminal History Category II with a

resulting guidelines range of 37 – 46 months. *See* Presentence Report, ¶ ¶ 34, 35, 36, 37, & 41. Moreover, Mr. Cardona was sentenced on the same day for all of the driving offenses listed in the above paragraphs and received concurrent 9 month sentences to cover all the cases.

Clearly, Mr. Cardona's criminal history is overstated by his classification as a category VI offender, and thus a departure is warranted pursuant to U.S.S.G. §4A1.3(b). This section of the guidelines calls for a downward departure where "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." But for driving offenses, Mr. Cardona has only 2 other convictions that score. *See* PSR, ¶¶ 39 & 42. In *United States v. Lindia*, the court held that a sentencing court may depart downward if it determines that the category inaccurately reflects a defendant's actual criminal history. 82 F.3d 1154, 1165 (1st Cir. 1996) (abrogation recognized on other grounds by *United States v. Eirby*, 262 F.3d 31 (1st Cir. 2001)). Furthermore, the First Circuit in *United States v. Rivera,* 994 F.2d 942, 948 (1st Cir. 1993), noted that some guidelines set forth "encouraged" grounds for departures. Section 4A1.3 is one such guideline, and obviously under a non-mandatory guideline scheme such a factor is even more warranted.

Here, Mr. Cardona's placement in criminal history category VI – is driven exclusively by his operating after suspension cases. In fact, 10 out of his 12 criminal history points are a result of driving offenses. Moreover, 8 of the 10 points associated with driving infraction convictions took place when he was 22 years old. *See* PSR ¶¶ 34 – 37. Quite simply, criminal history category VI creates an inaccurate portrait of his actual criminality and his likelihood of recidivism. Implicit in criminal history category VI offenders is that they are much more likely to

recidivate when released from the sentence imposed. Here, however, the force of that assumption should be afforded little or no weight because the criminality that lands Mr. Cardona in category VI are offenses that would not be scored but for the fact that he received concurrent 9 month sentences. *See* U.S.S.G. §4A1.2(c)(1).

Accordingly, under the circumstances, Mr. Cardona submits that criminal history category VI inaccurately characterizes not only his past criminality but more importantly the likelihood of future criminal behavior. Because criminal history category VI subjects him to an unfairly harsh punishment under the guidelines, counsel submits that this Court should depart downward and treat Mr. Cardona as a criminal history category II offender. Category II paints a more accurate picture of Mr. Cardona's prior conduct, and more aptly represents his current risk of recidivism and the Court should depart down to Criminal History II and a guideline range of 37-46 months before applying the sentencing factors enumerated in 18 U.S.C. §3553(a).[2]

3. **Mr. Cardona's Personal History**

Mr. Cardona is 34 years old. He grew up in Boston with his parents – Victor Cardona and Gladys Robles. At 15, his parents separated and Victor remained with his mother but continued his close relationship with his father and his four siblings. He graduated from Jeremiah Burke High School and went on to earn an Associate Degree in Electrical Engineering from Massasoit Community College in 2014.

Mr. Cardona has worked steadily since graduating from college. At first, he worked jobs at CVS, Walgreens and the like. He then moved on to work for a pool company – where he unfortunately met many of the other individuals involved in the counterfeiting operation. In

---

[2] The Presentence Report identifies Section 4A1.3 as a factor that warrants a departure. *See* PSR, ¶ 95.

2018, he started working for Russ Electric in Hingham and then worked through a temporary agency at Brigham & Woman's Hospital as an engineer. For the past few years he has worked at MKS as an engineer. His bosses love him and he has a bright future at the company. In addition, to his full time day job, Mr. Cardona is an accomplished photographer. His photography company – Salt Photography LLC – is registered with the Massachusetts Secretary of State. *See* Certificate of Organization and Other Corporate Documents attached as Exhibit A.

Mr. Cardona's long history of hard work is only one facet of his character. Those who know him best describe his generosity, empathy, and kindness. Annita Dow, a friend and co-worker, writes:

> I [am] writing to you to show and explain who Victor is not only as a hard worker and amazing father but as an outstanding citizen. In many ways he's been such a big help, great supporter, and a very good friend. Since we've met he's never hesitated to give me a helping hand, whether it be rides to work or the store because I'm currently without a license. Right now he's even helping me move houses. Everyday he goes out of his way to pick me up and drop me off at work/home.

Letter from Annita Dow; attached as Part of Exhibit B.

Ms. Dow's sentiments are woven through the many letters of support that are attached to this memorandum. Aaron Philaphandeth, a member of the Chelmsford Police Department and a combat veteran, describes Victor as follows:

> Victor has proven to be an outstanding member of the family. I see him at every family and holiday gathering throughout the year. He has not hesitated to consistently reach out and contribute to such events in all 3 years. In the time that I have seen him with my aunt he displays great character and is a true gentleman….Even upon learning his open court case, I will still say I trust Victor to be a valuable member of my family and the community.

Letter from Aaron Philaphandeth; attached as part of Exhibit B.

–6–

Mr. Cardona is the father of a sixteen year old daughter, Thuy Cardona, who lives in Vietnam. In short, she is his world and he is acutely aware of how much pain he has caused her by committing the instant offense. He knows that his criminal behavior has prohibited him from visiting her for more than three years, and it causes him extreme pain, heartache, and guilt. He knows that his actions have taken him away from Thuy. He knows the pain he has caused her and it tears at him every day. Prior to his arrest in this case, Victor would travel to Vietnam for extended periods of time to be with Thuy and her mother, Kim Nguyen. His arrest and conviction in this case have precluded him from visiting Thuy over the past three years. Each and every person who knows Victor talks about his love for his daughter and how difficult the past three years have been for him. Ms. Dow writes:

> [Victor] cares and caters to her every need while being thousands of miles apart. Because most men I've come across in my lifetime chooses to be distant from their kids once they reach a certain age but not him. Unable to see his daughter after years of being away just makes him want to cater to her needs even more, talk to her whenever he can and work 10x harder to be prepared for the day he gets to see her again. An amazing father doesn't even come close to how much he truly loves and misses her.

Letter from Annita Dow; attached as part of Exhibit B.

Mr. Cardona is a hardworking, doting father, and strong present partner. He epitomizes the person this Court and society would want him to be: someone who recognizes the harm that his criminal behavior caused, not only to those close to him, but to society at large, and in response has done everything possible since his arrest to change. The only reason to incarcerate Mr. Cardona at this point is to punish him for his criminal behavior. While punishment is justified, it should also be tempered by the realization that Mr. Cardona is not the same person he was when he committed this offense. He is a law-abiding, hardworking, loving father and

–7–

partner. He is moving forward and working ceaselessly to atone for his actions in this case.

4.   **Mr. Cardona Post-Offense**

Law Enforcement arrested Mr. Cardona for the instant offense on October 30, 2019. In the 38 months since his arrest, Mr. Cardona has worked over 40 hours a week, most recently at MKS Instruments in Andover. MKS Instruments is a world-wide company that specializes in precision optics, plasma generation, and vacuum products that are used to support autonomous vehicles and artificial intelligence products.

Mr. Cardona's co-workers and supervisors rave about his intelligence and work ethic. *See* Exhibit B. But, perhaps more significant is how everyone talks about Victor's empathy, his willingness to help others, and his commitment to his daughter. Mylinh Sann, Victor's shift leader writes about his work ethic and compassion:

> Victor excel[s] here at the Company at a very steady pace. As his shift/team lead[er], I can see he has so much potential to further his education and goals. He has come a long way with us and help make production here smoother with his creativity. Victor is a very intelligent, capable man and I have no doubt that he will make a great impact wherever he goes. From my observation Victor has a lot of empathy toward his peers and that alone makes him strong and wise beyond many years.

Letter from Mylinh Sann; attached as part of Exhibit B.

His Manager, Wayne McPherson, writes:

> Victor is a phenomenal worker and does a lot to help out this company. He has moved up very quickly within the last 2.5 years that he has been working here and now know everything on the floor including Electrical Engineering. I know that he will have to serve a sentence soon and I and the company is willing to put Mr. Carodona on a Leave of Absence for one year until he is able to return to work.

Letter from Wayne McPherson; attached as part of Exhibit B.

Simply put, since the date of the offense – **38 months ago** – Victor has been doing

–8–

everything he can to demonstrate that his criminal behavior in this case does not represent his true character. Victor is doing everything society would want him to do upon release from prison: pursuing a career, forming healthy relationships, helping people, and being a good father. A lengthy period of incarceration at this juncture of Victor's life will simply interrupt, rather than provide a path toward, future achievement.

This Court should consider Victor's rehabilitation and conduct over the past 38 months in determining what constitutes an appropriate sentence. *See United States v. Sklar,* 920 F.2d 107 (1st Cir. 1990)(presentence rehabilitation may serve as a basis for a downward departure); *see also United States v. Rodriguez,* 724 F.Supp. 1118, 1119 (S.D.N.Y. 1989)(defendant's "impressive rehabilitation" evidenced that he no longer posed a danger to society and that the Guideline-prescribed sentence "would serve no end but ritualistic punishment with a high potential for destruction"). Moreover, other than punishment, there is nothing the Bureau of Prisons can provide to him. As the sentencing commission has pointed out extended periods of incarceration can have deleterious effects: incarceration often leads to the criminogenic effects of imprisonment which include contact with more serious offenders, disruption of legal employment, and weakening of family ties." U.S. Sentencing Commission, Staff Discussion Paper, *Sentencing Options Under the Guidelines* (Nov. 1996) at 19.

In short, a lengthy term of "imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who…understands the consequences of his criminal conduct and is doing everything in his power to forge a new life." *Gall v. United States,* 128 S.Ct. 586, 593 (2007).

**CONCLUSION**

For the foregoing reasons, the Court should impose the proposed sentence of one year and one day in prison followed by three years of supervised release. Such a sentence condemns Mr. Cardona's criminal behavior but acknowledges the tremendous strides and efforts he has taken to change his life since his arrest on this case.

Respectfully submitted,

VICTOR CARDONA
By his attorneys,

/s/ Stylianus Sinnis
Stylianus Sinnis
B.B.O. #560148
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel:   (617) 223-8061

CERTIFICATE OF SERVICE

I, Stylianus Sinnis, hereby certify that this document filed through email and the ECF system will be sent electronically to the January 12, 2023.

/s/ Stylianus Sinnis
Stylianus Sinnis