UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VICTOR CARDONA,<br><br>Defendant. | Case No. 19-CR-10480-FDS |

## SENTENCING MEMORANDUM

Put simply, prior to his arrest, Victor Cardona coordinated and participated in one of the most successful currency counterfeiting operations in recent Massachusetts history. Over the course of just a few years, Cardona outfitted a counterfeiting facility in his own home that was responsible for the manufacture of over $467,000 in counterfeit $100 bills. That is well over *four thousand* individual fake $100 notes. And beyond the mere production of the counterfeit currency, which took place on at least a weekly basis in his house, Cardona successfully engaged a team of subordinates to travel the country attempting to spend the fake money and convert it into authentic currency. For reasons outlined below and to be articulated at the sentencing hearing in this case, the government submits that a sentence of 48 months of imprisonment, plus three years of supervised release and a fine of $15,000, is necessary and appropriate for this case and this defendant.

## FACTUAL BACKGROUND

In 2019, agents from the U.S. Secret Service began an investigation into the source of counterfeit $100 bills that were being placed into circulation across the East Coast of the United States. Presentence Investigation Report ("PSR") ¶ 8. The bills at the center of the investigation were forged older-style $100 bills that had been printed on bleached genuine $1 bills and that bore one of three serial numbers (Series of 1985, Serial No. E52327421A; Series of 1988, Serial No. B61935669B; and Series of 1969, Serial No. B04780583A). PSR ¶¶ 8-13. To determine the

source of the counterfeit currency, agents tracked individuals who had been caught "passing" the fake money at points of sale from Massachusetts to Ohio and identified a common phone number in their cell phone records. PSR ¶ 8. Sure enough, that number belonged to the defendant in this case, Victor Cardona.

On October 30, 2019, agents executed a federal search warrant at Cardona's residence in Quincy, Massachusetts, and found an entire counterfeit currency manufacturing facility. PSR ¶ 11. Specifically, they found two Epson "all-in-one" inkjet printers; a paper shredder containing counterfeit bills that had been shredded; burned remains of counterfeit currency in the backyard; a "counterfeit buster" detection pen; cleaning products, including degreaser and Mr. Clean magic erasers; and counterfeit bills, including one fake $100 bill in Cardona's wallet. PSR ¶ 11; Dkt. No. 2-1, at 5. Most significantly, agents found three genuine $100 notes that matched the counterfeit currency they had been tracking across the country. PSR ¶ 11.

After being advised of his rights pursuant to *Miranda*, Cardona agreed to speak with agents and admitted substantial detail regarding his conduct and the currency counterfeiting operation uncovered at his house. PSR ¶ 12. Though he did not take ownership for the operation in its entirety, he admitted that he regularly procured the materials required to create the counterfeit currency and hosted one or more other individuals at his home on a weekly basis for the purposes of creating the fake bills. *Id*. He even described the process by which he created the fake currency:

First, a genuine $100 note was placed on the scanner bed of the "all-in-one" printer, and a copy of that bill was made on plain computer paper. Second, a bleached $1 bill was lined up and placed on the copy, directly over the image of the bill, and taped to the page. Finally, and without having moved the original $100 note from the scanner bed, the $100 bill was photocopied onto the bleached bill. Any bills that were not copied well enough to be placed into circulation evidently were burned in the backyard or shredded. Dkt. No. 2-1, at 5.

In general, when counterfeit U.S. currency is identified, it is collected and tracked by the Secret Service, which keeps records of where and when counterfeit notes are located.

Counterfeit bills matching the serial numbers of the three authentic $100 bills located in Cardona's house have been collected as recently as 2022, meaning that some of the counterfeit currency created through Cardona's operation was still being introduced into circulation (or had remained in circulation) even just last year. In total, the Secret Service has collected over $467,000 in counterfeit $100 bills matching the serial numbers of those genuine $100 bills found in Cardona's residence. PSR ¶ 13.

## DISCUSSION

### I. Sentencing Guidelines Calculation

With a base offense level of nine and enhancements of twelve points (because the amount of counterfeit currency attributable to Cardona exceeds $250,000, pursuant to USSG §§ 2B5.1(b)(1)(B) and 2B1.1(b)(1)(G)) and two points (because Cardona manufactured counterfeit obligations of the United States and/or had custody and control over a counterfeiting devices and counterfeiting materials), the Adjusted Offense Level in this case is 23. With his acceptance of responsibility, the offense level is reduced by three levels, resulting in a Total Offense Level of 20. Given twelve criminal history points, Cardona qualifies for Criminal History Category ("CHC") V, resulting in a Guidelines range of 63 to 78 months of incarceration.

The government concurs with Probation's computation of twelve criminal history points and, to be sure, the defendant has a lengthy criminal history. For example, Cardona was notably convicted on two separate occasions for forgery, in 2012 and 2014, when he was caught altering, stealing, or otherwise fabricating checks from two different businesses. However, the government also agrees with at least a portion of the argument on this issue put forward in Cardona's sentencing submission. *See* Dkt. No. 84, at 3-5. With respect to scoreable convictions, the majority – five out of seven – are convictions for operating a motor vehicle after the suspension of his driver's license. Though these convictions are, indeed, for crimes that rightly score for criminal history calculation purposes, the government submits that, taken in total, they skew the defendant's criminal history category – though nowhere near as much as Cardona would like them to. In his submission, Cardona is essentially asking the Court to

completely disregard all of these convictions ("Absent these 10 criminal history points, Mr. Cardona would be in Criminal History Category II with a resulting guidelines range of 37-46 months."). Dkt. No. 84, at 3-4. While Cardona's "operating after" convictions admittedly do not constitute crimes of the century, they do paint a picture of a man who has a blatant disregard for the rules and who is willing to repeatedly and knowingly break the law. To that end, the government supports a benevolent view with respect to Cardona's criminal history but submits that the Court should not completely disregard it – as Cardona suggests.

## II.     A Significant Sentence Is Necessary to Satisfy the Section 3553(a) Factors

The sheer scope of Victor Cardona's conduct mandates a significant sentence in this case. Nationally, prosecutions for counterfeiting U.S. currency are relatively infrequent, and rarer still are prosecutions in cases where nearly half a million dollars can be traced directly to a single currency counterfeiting operation. Here, a sentence of 48 months of incarceration is necessary to deter this defendant from ever again reengaging in this type of criminal conduct, to generally deter other prospective counterfeiters from attempting to do this on their own, and to otherwise satisfy the objectives of 18 U.S.C. § 3553(a).

Currency counterfeiting cases can be divided into two categories: those that deal with the individuals who "pass" or attempt to pass fake money at various points of sale, and those in which the defendant actually manufactures the counterfeit currency. Congress has recognized and codified the serious nature of both types of counterfeiting crimes, and the Sentencing Commission has specifically tethered punishment to the amount of money a defendant is responsible for passing or producing. USSG §§ 2B5.1(b)(1)(B) and 2B1.1(b)(1)(G). However, sentences for defendants found guilty merely of passing counterfeit currency pale in comparison to those charged with producing it. *Compare United States v. Murray*, Case No. 3:20-cr-00231-RDM (M.D. Pa. July 29, 2021) (defendant charged only with passing counterfeit currency sentenced to 10 months of imprisonment) and *United States v. Hamblin*, Case No. 2:13-cr-00146-WKS (D. Vt. May 19, 2014) (defendant charged with passing counterfeit currency sentenced to 15 months) *with United States v. Pancione*, Case No. 3:12-cr-30001-MAP (D.

4

Mass. Apr. 1, 2013) (defendant charged with manufacturing $20 bills sentenced to 33 months) and *United States v. Forteau*, Case No. 2:21-cr-00028-RAJ (E.D. Va. Mar. 14, 2022) (defendant charged with producing counterfeit $100 bills on bleached genuine $1 bills sentenced to 60 months).[1]

The sum of fake money traced to Victor Cardona's counterfeiting operation dwarfs that of even some of the most "successful" counterfeiters prosecuted federally in recent years. As such, there are few cases even nationally that provide useful points of comparison. In 2021, a defendant in Maryland was convicted for manufacturing and passing approximately $95,000 of fake currency; he was sentenced to 41 months of imprisonment, along with three years of supervised release. *United States v. Taylor*, Case No. 20-cr-00030 (D. Md. June 4, 2021). Last year, in a scheme remarkably similar to Cardona's, a defendant in the Eastern District of Virginia was found guilty of producing more than $235,000 by printing $100 bills on bleached genuine $1 bills; he was sentenced to 60 months of imprisonment. *United States v. Forteau*, Case No. 2:21-cr-28 (E.D. Va. Mar. 14, 2022).[2]

As noted above, the government agrees that twelve criminal history points – though technically accurate – overstates Cardona's true criminal history. That said, the government respectfully submits that completely ignoring or discounting *all* of the convictions for operating a motor vehicle with a suspended license would grossly *under*state Cardona's criminal history.[3] And, regardless of how the Court deals with Cardona's criminal history calculation, the government submits that a sentence of 48 months is squarely in the ballpark and entirely

---

[1] *But see United States v. Perry*, Case No. 19-cr-10332-GAO (D. Mass. Oct. 22, 2019) (defendant charged with making counterfeit currency but sentenced only to 15 months; however, total amount did not meet threshold under USSG § 2B5.1(b)(1)(B) for amount-based enhancements).

[2] As mentioned above, cases involving defendants guilty only of passing the counterfeit currency, as opposed to manufacturing and distributing it, typically receive lower sentences.

[3] The government does not take a position as to whether the Court should formally depart downward or decline to depart and merely impose a below-Guidelines sentence.

appropriate. For argument's sake, even if all of the defendant's multitude of motor vehicle convictions suddenly disappeared, he would still be left with a Guidelines range of 37-46 months. Dkt. No. 84 at 4. If all of the motor vehicle offenses were consolidated into a single two-point conviction, Cardona would have four criminal history points (CHC III) and a Guidelines range of 41-51 months. Discounting half of the motor vehicle convictions, which though arbitrary may be fair, would result in seven criminal history points (CHC IV) and a Guidelines range of 51-63 months.

No matter the calculation, Cardona's criminal history indicates two important and relevant characteristics. First, Cardona's repeated arrest and conviction history when it comes to driving reveals someone who does not think the rules apply to him and will not follow the law – time and time again. Second, Cardona has been caught on two totally separate occasions and charged with forgery. He has a history of dishonest and fraudulent conduct when it comes to monetary instruments and has obviously not yet learned his lesson. He was caught in 2012 forging a company check to himself by adding a zero to the amount written or printed, as well as using the company's checking account number to open a bank account to pay his own personal bills. PSR ¶ 39. He was caught again in 2014 when he forged another company's check, on which he also forged the "sign stamp," and successfully deposited it. PSR ¶ 42. If anything, Cardona's continuing conduct indicates that he has gotten better at forgery over the years and has utterly failed to understand the import of his actions.

Given the facts and circumstances of this case, and the history, characteristics, and conduct of the defendant, a sentence of 48 months – which is within or below any fairly calculated version of the Guidelines sentencing range – is both reasonable and necessary to promote respect for the law, to adequately punish the defendant for his criminal conduct, and to deter him and others from offending in the same ways again.

## CONCLUSION

Taking into account the scope and seriousness of the conduct itself, as well the defendant's acceptance of responsibility, a sentence of 48 months of incarceration is reasonable

and warranted in this case. Specifically, the government submits that a sentence of 48 months of incarceration, along with three years of supervised release and a $15,000 fine[4], is reasonable and just and appropriately satisfies the sentencing objectives of 18 U.S.C. § 3553(a). Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

                                            Respectfully Submitted,

                                            RACHAEL S. ROLLINS
                                            United States Attorney

Date: January 16, 2023          By:     /s/ *Adam W. Deitch*
                                                          Adam W. Deitch
                                                          Assistant United States Attorney
                                                          United States Attorney's Office
                                                          One Courthouse Way
                                                          Boston, MA 02210
                                                          617-748-3123

---

[4] Cardona's financial disclosures indicate, among other things, ownership of three different vehicles: a Nissan 370z valued at $30,000, a 2009 BMW X3, and a vintage Mercedes. PSR ¶ 77. As such, the government requests a fine at the low end of the Guidelines – that is, $15,000 – pursuant to USSG § 5E1.2(c)(3).

## CERTIFICATE OF SERVICE

      Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                              */s/ Adam W. Deitch*
                                              Adam W. Deitch
                                              Assistant United States Attorney

Dated:  January 17, 2023